IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.
2013 SEP -9 A 11: 25
CLERK_____
SO. DIST. OF GA.

EDWARD PALMORE,

    Plaintiff,

vs.

TINA TUCKER and
STEVEN CHAMBLESS,

    Defendants.

CIVIL ACTION NO.: CV510-040

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Edward Palmore ("Palmore"), who is currently incarcerated at Coffee Correctional Facility in Nicholls, Georgia, filed a cause of action pursuant to 42 U.S.C. § 1983 contesting certain conditions of his confinement while he was housed at D. Ray James Correctional Facility in Folkston, Georgia. Plaintiff filed a Motion for Summary Judgment. Defendants Steven Chambless and Tina Tucker ("Defendants") filed a Response and a Motion for Summary Judgment, and Plaintiff filed a Response. For the reasons which follow, Plaintiff's Motion should be **DENIED** and Defendants' Motion should be **GRANTED**.

## STATEMENT OF THE CASE

Plaintiff asserts that he was housed in a cell at D. Ray James Prison with Keith Wilson, who used a cell phone in their prison cell at all times during the day. Plaintiff contends that he informed Defendant Tucker, a building officer, that Wilson intimidated him. Plaintiff asserts that he tried to get moved to another cell on several occasions without success. Plaintiff also contends that Deputy Warden Knowles and Defendant

Chambless came to his cell two (2) days after he spoke with Defendant Tucker to search the cell and to conduct a strip search. Plaintiff states that he asked Knowles and Defendant Chambless about moving, but these two officers only told him to inform them if he had any problems with Wilson. Plaintiff avers that soon after this search occurred, Wilson assaulted him. Plaintiff's Complaint was served on Defendants based on his claim that Defendants failed to protect him from a known threat to his safety, in violation of the Eighth Amendment. (Doc. No. 16).

Defendants contend that Plaintiff failed to exhaust his administrative remedies prior to the filing of his Complaint, and, accordingly, Plaintiff's claims against them should be dismissed.[1] In the alternative, Defendants contend that Plaintiff fails to state an Eighth Amendment claim against them.

## STANDARD OF REVIEW

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). "Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Id. (internal punctuation and citation omitted). A judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id.

---

[1] The Eleventh Circuit Court of Appeals reversed this Court's determination that Plaintiff did not exhaust his administrative remedies and remanded this matter for a determination of whether, taking Plaintiff's version of events regarding exhaustion as true, Plaintiff exhausted his available administrative remedies. (Doc. Nos. 149, 151).

2

## DISCUSSION AND CITATION TO AUTHORITY

Defendants assert that Plaintiff filed Informal Grievance Number 25590 on August 21, 2009, and complained that Defendant Tucker gave information to his cellmate. Defendants aver that, after this informal grievance was rejected, Plaintiff filed Informal Grievance Number 27535 on September 1, 2009, and Plaintiff complained about the cell inspection which occurred on August 21, 2009. This informal grievance was rejected. Rather than file a formal grievance, Defendants aver, Plaintiff filed Informal Grievance Number 28424, this time detailing the alleged inadequate medical treatment for the injuries he received on August 21, 2009. Defendants allege that Plaintiff filed a formal grievance after the rejection of Informal Grievance Number 28424 and that Plaintiff mentioned that his cellmate attacked him after Defendant Tucker allegedly gave information to his cellmate. As relief in his formal grievance, Plaintiff requested additional testing and treatment. Plaintiff filed an appeal after his formal grievance was denied, and Defendants assert that Plaintiff's appeal concerned the inadequacy of his medical treatment. (Doc. No. 123, pp. 3—4).

Where Congress explicitly mandates, prisoners seeking relief for alleged constitutional violations must first exhaust inmate grievance procedures before filing suit in federal court. See Porter v. Nussle, 534 U.S. 516, 524 (2002). 42 U.S.C. § 1997e(a) states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." In Porter, the United States Supreme Court held that exhaustion of available administrative remedies is mandatory. Porter, 534 U.S. at 523. The Supreme Court has noted exhaustion must be "proper." Woodford v. Ngo, 541

AO 72A
(Rev. 8/82)

U.S. 81, 92 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. In other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007).

In Turner v. Burnside, 541 F.3d 1097 (11th Cir. 2008), the Eleventh Circuit clarified how the lower courts are to examine the issue of exhaustion of administrative remedies. First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376-77.

Standard Operating Procedure ("SOP") IIB05-0001 set forth the three (3) steps an inmate had to complete under the previous version of Georgia Department of Corrections' grievance procedure.[2] First, an inmate was to file an informal grievance

---

[2] D. Ray James Correctional Facility now houses federal detainees, but, at the time of the events giving rise to Plaintiff's Complaint, this facility housed state inmates. This SOP was revised in December 2012.

4

"no later than 10 calendar days from the date" the inmate was aware "of the facts giving rise to the grievance." (Doc. No. 122-3, p. 9). An inmate was to be given a written response to his informal grievance within ten (10) calendar days of the counselor's receipt of the inmate's informal grievance. (Id. at p. 10). If the inmate had been dissatisfied with the resolution of his informal grievance, he was to file a formal grievance within five (5) days of his receipt of the written resolution of his informal grievance. (Id.). Prison staff had thirty (30) days to complete the formal grievance process after the counselor filed the formal grievance. (Id. at p. 12). If the Warden exceeded this time period, the inmate could file an appeal with the Commissioner's Office, unless a one-time ten (10) day extension was authorized and the inmate was notified. (Id. at p. 8). Once an inmate received the Warden's response to his formal grievance and was dissatisfied with that response, he had five (5) business days to file an appeal with the Commissioner. (Id. at p. 12). The Commissioner's Office had 90 calendar days after receipt of the appeal to respond. (Id. at p. 13). Inmates in isolation and segregation areas were to be provided with grievance forms upon request by staff in those areas. (Id. at pp. 9, 12).

Plaintiff asserts that he was not given a formal grievance form after Informal Grievance Numbered 25590 was rejected. (Doc. No. 53, p. 2; Doc. No. 152-1, p. 5). Plaintiff also asserts that no prison official visited him to collect a grievance form while he was in segregation. (Doc. No. 53, p. 2). Plaintiff further asserts that prison officials would not give him a formal grievance form after the rejection of Informal Grievance Numbered 27535.

AO 72A
(Rev. 8/82)

Defendants submitted a printout of Plaintiff's grievance history, as well as copies of the informal and formal grievances which are relevant to the present Motion. These documents reveal that Plaintiff filed Informal Grievance Numbered 25590 on August 21, 2009, and requested that Defendant Tucker keep confidential the information he provided that his cellmate was using a cell phone. Plaintiff asserted that, if that information were divulged, he would be placed in a "precarious situation." (Doc. No. 71-2, p. 21). Plaintiff's informal grievance was rejected on August 25, 2009.[3] (Id.). There is no evidence that Plaintiff filed a formal grievance. Plaintiff then filed Informal Grievance Numbered 27535 on September 1, 2009, and Plaintiff complained about staff negligence. This informal grievance was rejected on September 16, 2009. (Id. at pp. 2, 22). Plaintiff did not file a formal grievance. Finally, Plaintiff filed Informal Grievance Numbered 28424 on September 22, 2009. In this informal grievance, Plaintiff contended that he was assaulted and the medical treatment he received as a result was not effective treatment for his pain and injuries. (Id. at p. 31). After this informal grievance was denied, Plaintiff filed Formal Grievance Numbered 216726, and he once again complained about the inadequacy of the medical treatment he received after he was assaulted, and he requested medical testing and treatment. Plaintiff mentioned that the assault occurred after Defendant Tucker revealed information he had given her in confidence, but he failed to mention this in his informal grievance.[4] (Id. at 28).

---

[3] Plaintiff's informal grievance was rejected for two (2) reasons: housing assignments were non-grievable, and he grieved two (2) issues. The reasons for this rejection are of no moment, as Plaintiff did not complain about being assaulted by his cellmate or about Defendants failing to protect him from a known threat to his safety.

[4] To the extent the Warden's Office would have treated Plaintiff's mention of Defendant Tucker's alleged action as a basis for his formal grievance, Plaintiff's formal grievance likely would have been rejected at the Warden's level, as Plaintiff did not complain about Defendant Tucker's actions at the informal

6

Plaintiff then filed an appeal after his formal grievance was denied. The Georgia Department of Corrections determined that Plaintiff's medical needs were handled appropriately and denied his appeal. (Id. at pp. 23—24, 27).

The Court must resolve the factual dispute between the parties' versions on exhaustion. The Court recognizes Plaintiff's contention that he was not provided with grievance forms while he was in segregation. However, the record belies this contention. Specifically, the evidence reveals that Plaintiff was given at least five (5) informal grievance forms and one (1) formal grievance form while he allegedly was in segregation. Plaintiff's Informal Grievance Numbered 25590 was rejected on August 25, 2009. (Doc. No. 71-2, p. 21). Instead of filing a formal grievance, Plaintiff filed three (3) other informal grievances, Numbered 27531, 27532, and 27535, on September 11, 2009. (Id. at pp. 2, 20, 22). The informal grievance Numbered 27535, which concerns the issues before the Court, was rejected on September 16, 2009. (Id. at p. 22). Plaintiff did not file a formal grievance. Instead, just six (6) days later, Plaintiff filed Informal Grievance Numbered 28424, which was rejected on September 28, 2009. (Id. at p. 31). On this same date, Plaintiff was given a formal grievance form. Plaintiff submitted Formal Grievance Numbered 216726 on October 1, 2009, while he was still housed at D. Ray James Prison. (Id. at p. 28).

Based on the evidence before the Court, it is evident that Plaintiff did not "properly" exhaust his administrative remedies before he filed his Complaint based on his contentions that Defendants knew of a risk to Plaintiff's safety and failed to protect

---

grievance level. (Doc. No. 122-3, p. 10, ¶ C4) ("Any grievance which . . . addresses an issue not identified on the Informal Grievance will be rejected.").

Plaintiff from this risk.[5] Plaintiff was aware of the grievance process, as shown by his completion of that process with Informal Grievance Numbered 28424. The undersigned rejects Plaintiff's assertion that he was not given grievance forms while in segregation because, as noted above, the record before the Court belies this assertion.

It is unnecessary to address the alternative contention set forth in Defendants' Motion.

### CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Plaintiff's Motion for Summary Judgment be **DENIED**. It is also my **RECOMMENDATION** that Defendants' Motion for Summary Judgment be **GRANTED**, and that Plaintiff's Complaint be **DISMISSED**, without prejudice, due to his failure to exhaust his available administrative remedies prior to the filing of this cause of action.

**SO REPORTED** and **RECOMMENDED**, this 9th day of September, 2013.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

---

[5] Even though D. Ray James Prison was a privately owned prison (i.e., the Georgia Department of Corrections did not operate the Prison), the statewide grievance procedure was applicable to the inmates housed at this penal institution at the time giving rise to the events alleged in Plaintiff's Complaint. (Doc. No. 122-3, p. 5, § II).

AO 72A
(Rev. 8/82)